CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 3 2016

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 3:14CR00016 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DANIEL LAMONT MATHIS, et al., | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendants. | ) | Chief United States District Judge |

Following a seventeen-day jury trial in February of 2016, Daniel Lamont Mathis, Shantai Monique Shelton ("Shantai"), Mersadies Lachelle Shelton ("Mersadies"), and Kweli Uhuru ("Kweli") were convicted of numerous offenses, including conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d); kidnapping and murder in aid of racketeering, in violation of 18 U.S.C. § 1959; murder of a witness, in violation of 18 U.S.C. § 1512(a)(1)(C); and related firearm offenses, in violation of 18 U.S.C. § 924(c). On September 19, 2016, the parties appeared before the court for a post-trial motions hearing. This memorandum opinion sets forth the court's rulings on the following motions: (1) the motion to dismiss Counts Thirty and Thirty-One of the superseding indictment filed by Mathis; (2) the joint motion for judgment of acquittal or a new trial filed by Mathis and Kweli; (3) the motion for new trial filed by Kweli; and (4) the supplemental motion for judgment of acquittal filed by Mathis and Kweli.

## I.    Motion to Dismiss Counts Thirty and Thirty-One

On February 2, 2016, after the jury was empaneled and sworn, Mathis moved to dismiss Counts Thirty and Thirty-One of the superseding indictment for failure to state an offense. Mathis argued that Count Thirty, charging murder of a witness in violation of 18 U.S.C. § 1512(a)(1)(C), should be dismissed as defective because it did not allege that the victim of the

murder, Kevin Quick, was killed to prevent him from communicating "to a law enforcement officer . . . of the United States" information relating to the commission or possible commission of a federal offense. 18 U.S.C. § 1512(a)(1)(C) (emphasis added). Instead, Count Thirty alleged that the defendants killed Quick "with the intent to prevent communication by Kevin Quick to a law enforcement officer information relating to the commission of or possible commission of a federal offense . . . ." Dkt. No. 221 at 40-41. Mathis further argued that the related § 924(c) count charged in Count Thirty-One "must be dismissed as well" since "Count Thirty fails to state a federal offense." Dkt. No. 664 at 4.

The court denied the motion in open court on the basis that it was untimely. During the hearing on the defendants' post-trial motions, Mathis reasserted the same arguments. For the reasons that follow, the court remains convinced that the motion to dismiss Counts Thirty and Thirty-One must be denied as untimely.

Under the current version of Rule 12 of the Federal Rules of Criminal Procedure, which went into effect on December 1, 2014, "a defect in the indictment or information, including . . . failure to state an offense" must be raised "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3).[1] The court may set a deadline for the filing of pretrial motions, and it may

---

[1] Under the former version of Rule 12, "[a] challenge that an indictment fails to state an offense . . . [could] be raised at any time while the case [was] pending." United States v. Buchanan, 574 F.3d 554, 565 (8th Cir. 2009). Although the current version of the rule did not take effect until a few weeks after the superseding indictment was returned by the grand jury, the Supreme Court's order promulgating the 2014 amendments to the Federal Rules of Criminal Procedures provided that the new rules "shall govern in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." S. Ct. Order Amending Fed. R. Crim. P. at ¶ 2 (Apr. 25, 2014). The instant case was pending when the amended rules took effect on December 1, 2014, and the defendants did not proceed to trial until February 1, 2016. Thus, by the time Mathis moved to dismiss Counts Thirty and Thirty-One, the amended version of Rule 12 had been in effect for fourteen months. Under these circumstances, the court concludes that it would not be unjust or impracticable to apply the amended version of Rule 12. Cf. United States v. Bankston, 820 F.3d 215, 229 (6th Cir. 2016) (declining to apply the amended version of Rule 12 since "the older version of Rule 12 was in effect during Bankston's trial and when she filed this appeal").

reset the deadlines at any time prior to trial. Fed. R. Crim. P. 12(c)(1)-(2). Otherwise, "the deadline is the start of trial." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3). A district court "may consider" an untimely motion only if the movant "shows good cause." Id.; see also United States v. Soto, 794 F.3d 635, 648 (6th Cir. 2015) (explaining that Rule 12(c)(3) governs a district court's ability to review an untimely motion).

In this case, the court set January 4, 2016 as the deadline for filing pretrial motions. See Dkt. No. 598 at ¶ 3. That deadline was not extended or reset prior to trial. Although Mathis moved to dismiss other counts of the superseding indictment on January 4, 2016, he did not file the instant motion until February 2, 2016, after the jury had been sworn and jeopardy had attached. See Baum v. Rushton, 572 F.3d 198, 206 (4th Cir. 2009) ("In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn."). Accordingly, the motion to dismiss Counts Thirty and Thirty-One was untimely.[2]

Moreover, the court remains convinced that Mathis did not establish "good cause" to excuse his untimely filing. Mathis's counsel acknowledged that he was aware of the alleged defect prior to trial, and that he withheld the motion until after jeopardy attached in hopes of using it as a bargaining chip in negotiating a plea agreement with the government. This strategic move on the part of counsel does not amount to good cause. See United States v. Ramirez, 324 F.3d 1225, 1228 n. 8 (11th Cir. 2003) (holding that the defendants were unable to establish good

---

[2] When this issue was raised at trial, Mathis suggested that the alleged defect in the indictment was a "jurisdictional" defect that could be raised at any time, pursuant to Federal Rule of Criminal Procedure 12(b)(2). This argument, as the court explained in open court, is contrary to established precedent. See United States v. Cotton, 535 U.S. 625, 631 (2002) (holding that a defective indictment does not deprive a court of jurisdiction); see also United States v. Carr, 303 F.3d 539, 543 (4th Cir. 2002) (concluding, under Cotton, that the omission from an indictment of an essential element of a crime was not an error that deprived the district court of jurisdiction to adjudicate the defendant's case).

cause where they "were clearly prepared to file their motion earlier, but decided to withhold it in order to seek a strategic advantage by waiting until jeopardy attached upon the swearing in of the jury"). Nor does the fact that some of the other defense attorneys were unaware of the alleged defect until after the motion to dismiss was filed. See United States v. Brandon, 636 F. App'x 542, 547 (11th Cir. 2016) ("Failure or inadvertence of counsel to timely file a motion . . . does not constitute good cause."); see also United States v. Ruhe, 191 F.3d 376, 386-87 (4th Cir. 1999) (holding that there existed no good cause to raise an untimely suppression motion where the defendant could have with due diligence discovered the information necessary to raise the issue); United States v. Nursey, No. 2:15-CR-112-WKW, 2015 U.S. Dist. LEXIS 154410, at *6 (M.D. Ala. Aug. 7, 2015) (holding that a defendant failed to establish good cause for the untimely filing of his motion to dismiss the indictment since the defendant's "arguments relating to the indictment's alleged failure to state an offense could have been timely raised had counsel considered the indictment and [the applicable statute] at the time of defendant's indictment and arraignment").

For these reasons, the court declines to consider the merits of the motion to dismiss Counts Thirty and Thirty-One for failure to state an offense. That motion, in which other defendants joined, will be denied as untimely.

## II.     Joint Motion for Judgment of Acquittal or a New Trial

Mathis and Kweli filed a joint motion for judgment of acquittal or a new trial, which was joined in by Mersadies and Shantai. In this particular motion, defendants argue that the court constructively amended the indictment, and that there was insufficient evidence to prove the existence of a racketeering enterprise or a conspiracy to participate in the conduct of the affairs

4

of an enterprise through a pattern of racketeering activity. The court will address each of these arguments in turn.

## A.     Claim of Constructive Amendment to the Charged Racketeering Enterprise

The defendants were charged with conspiring to participate in a racketeering enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and with committing violent crimes in aid of racketeering ("VICAR"). In the joint motion for judgment of acquittal or a new trial, the defendants first argue that the court constructively amended the superseding indictment when it instructed the jury that the alleged racketeering enterprise, for purposes of the RICO conspiracy count and the VICAR counts, was the "the 99 Goon Syndikate" rather than "the Bloods." For the following reasons, the court concludes that the defendants invited the error of which they complain and that the claim of constructive amendment is nonetheless without merit.

The defendants' argument is based primarily on paragraph 13 of the first count of the superseding indictment, which alleged that the defendants were members of a criminal organization known as "the Bloods," and that "[t]his criminal organization, including its leadership, membership, and associates constituted an 'enterprise,'" for purposes of 18 U.S.C. § 1961(4). Dkt. No. 221 at 2. In the preceding twelve paragraphs, however, the superseding indictment alleged that "[t]he Bloods street gang is comprised of individual units, or 'sets,'" and that the particular set at issue in this case is the "99 Goon Syndikate." Id. at 2. The superseding indictment alleged that, at all times relevant to the superseding indictment, Mathis, Shantai, Mersadies, and Kweli were members of "the 99 Goon Syndikate set of the Blood[s] Street Gang," and that Kweli, along with co-defendants Halisi Uhuru and Anthony Stokes, "managed [and] promoted . . . the criminal enterprise" and "directed lower-ranking members to further the

enterprise." Id. at 4. It went on to list the identification number and title for each defendant, as well as the types of criminal acts that "Bloods Street Gang members, including [the] 99 Goon[] Syndikate," committed "in the Western District of Virginia and elsewhere." Id. at 5. For the RICO conspiracy count, the superseding indictment alleged that the defendants were "employed by and associated with the enterprise described above." Id. at 10-11. For each of the VICAR counts, the superseding indictment alleged that "the Bloods, as more fully described in paragraph One through Seventeen of this Indictment, . . . constituted an enterprise . . . ." See, e.g., id. at 21.

Prior to trial, Mathis moved to strike alleged "surplusage" from the superseding indictment, including the introductory paragraphs describing the history of the Bloods gang. Mathis emphasized that "the 99 Goon Syndikate [is] the organization that the defendants are actually alleged to have joined." Dkt. No. 369 at 3. Mathis expressed concern over the possibility that the court would permit the jury to have the detailed indictment with it during deliberations. The government ultimately agreed that it would not seek to provide the jury with a copy of the superseding indictment, and that it would instead prepare a chart listing the counts charged in the superseding indictment and the defendants named in each count.

Prior to trial, both sides submitted proposed jury instructions. The government's proposed instructions included the following language: "In this case, the government has alleged that the 99 Goon Syndikate is an enterprise." Dkt. No. 640 at 37. The court used the same language in its proposed instructions.

On the evening of Thursday, February 18, 2016, the court met with the parties in chambers to discuss the proposed instructions. While in chambers, Mathis argued for the first time that the jury should be instructed that the charged enterprise was the Bloods rather than the

6

99 Goon Syndikate. To support this argument, Mathis relied on the Eleventh Circuit's decision in United States v. Weissman, 899 F.2d 1111 (11th Cir. 1990), the same decision on which the defendants now rely. In response, the government emphasized that the superseding indictment did not merely allege that the criminal enterprise was the Bloods and nothing more, and that it instead made clear that the alleged enterprise was "the Bloods, as more fully described in Paragraph One through Seventeen of Count One of the Indictment." Dkt. No. 221 at 21; see also id. at 11 (referring to "the enterprise described above"). The government proposed, as an alternative, that the court instruct the jury using the precise language in the superseding indictment, and then provide the jury with the relevant paragraphs of the indictment describing the enterprise. Defense counsel declined that option and elected to proceed with the instructions as originally proposed.

The next morning, the court invited counsel to make objections on the record regarding the court's proposed instructions. Mathis indicated that he wanted to memorialize his objection to the jury being instructed that the charged enterprise was the 99 Goon Syndikate rather than the Bloods. In response, both the government and the court reiterated that the defendants had been given the option of amending the proposed instructions to track the language of the superseding indictment, with the understanding that the relevant portions of the indictment would be provided to the jury. Rather than having the instructions track the language of the superseding indictment, counsel chose to keep the instructions as worded.

The defendants now argue that the court constructively amended the superseding indictment by instructing the jury that the alleged racketeering enterprise, for purposes of the RICO conspiracy count and the VICAR counts, was the 99 Goon Syndikate rather than the Bloods. Because the defendants were given the option of amending the instructions to include

7

the more detailed description of the enterprise in the superseding indictment, but elected not to do so, the court agrees with the government that the defendants' claim of constructive amendment is barred by the invited error doctrine. See United States v. Myers, 581 F. App'x 171, 173 (4th Cir. 2014) ("[W]e reject as without merit Myers' contention that the district court erred in instructing the jury on the second and third elements of the § 922(g)(8) offense because Myers invited the error of which he now complaints by opposing amendment of the proposed instructions at the charging conference."); United States v. Quinn, 359 F.3d 666, 674-75 (4th Cir. 2004) ("[T]he record shows . . . that the district court's instruction on this issue was precisely the instruction that they requested . . . [A]ny error committed by the district court in giving this instruction was invited error and is not subject to review.").

In any event, the defendants' claim of constructive amendment also fails on the merits. "A constructive amendment, also known as a 'fatal variance,' happens when 'the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both broadens the bases for conviction beyond those charged in the indictment.'" United States v. Roe, 606 F.3d 180, 189 (4th Cir. 2010) (emphasis added) (quoting United States v. Malloy, 568 F.3d 166, 178 (4th Cir. 2009)). Here, unlike in Weissman, the court did not broaden the enterprise language in the superseding indictment so as to permit the jury to convict on the basis of any enterprise as long as it met the required elements. See Weissman, 899 F.2d at 1113-15 (holding that the district court constructively amended an indictment that identified a specific crime family as the charged enterprise by instructing the jury that they could convict on the basis of any enterprise). To the extent that the court's instructions did not track the precise language of the superseding indictment, they actually narrowed the bases upon which the jury could find that an enterprise existed by identifying the 99 Goon Syndikate, the smaller subset of

the Bloods organization, as the charged enterprise at issue. For these reasons, the joint motion for judgment of acquittal or a new trial will be denied with respect to this claim of constructive amendment.

## B. **Claims of Insufficient Evidence**

The joint motion also challenges the sufficiency of the evidence to support the defendants' convictions on the RICO conspiracy count and the VICAR counts. When a motion for judgment of acquittal is based on a claim of insufficient evidence, the jury verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010) (citation and internal quotation marks omitted). In determining whether substantial evidence supports a verdict, the court considers both circumstantial and direct evidence, drawing all reasonable inferences from such evidence in the government's favor. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). The court does not reweigh the evidence or reassess the jury's determination of witness credibility, United States v. Brooks, 524 F.3d 549, 563 (4th Cir. 2008), and can overturn a conviction on insufficiency grounds "only when the prosecution's failure is clear," United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (citation and internal quotation marks omitted).

## 1. **Enterprise**

The defendants first claim that the evidence introduced at trial was insufficient to prove that the 99 Goon Syndikate was an "enterprise," as required to secure a conviction under both the

9

RICO and VICAR statutes. See 18 U.S.C. §§ 1959, 1962 (setting forth the required elements, including the existence of an "enterprise").

Section 1961 provides that an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "In United States v. Turkette, 454 U.S. 576 (1981), the Supreme Court clarified that the term 'enterprise' encompasses 'both legitimate and illegitimate enterprises within its scope.'" United States v. Palacios, 677 F.3d 234, 248 (4th Cir. 2012) (quoting Turkette, 452 at 580). The Court held that an enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct," which is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583. More recently, the Supreme Court explained that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 945 (2009).[3] "It cautioned, however, against reading the term 'enterprise' too narrowly":

---

[3] In accordance with the applicable statutory provisions and the Supreme Court's decisions in Turkette and Boyle, the court instructed the jury as follows:

> The term "enterprise," as used in these instructions, includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

> An enterprise also includes a group of people who have associated together for a common purpose of engaging in a course of conduct. This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have associates who function as a continuing unit. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate or lawful purpose, or it may be organized for an unlawful purpose.

(cont'd on next page)

10

> [A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods . . . . Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

Palacios, 677 F.3d at 249 (quoting Boyle, 556 U.S. at 948).

Based on this guidance from the Supreme Court, the court concludes that the evidence presented by the government, viewed in its favor, was sufficient to allow a reasonable jury to determine that the 99 Goon Syndikate was an "enterprise," for purposes of the RICO and VICAR statutes. First, the government's evidence demonstrated that members of the 99 Goon Syndikate associated together for a common purpose of achieving the objectives of the gang, which included promoting and enhancing the gang, enriching its members through the commission of criminal acts, providing assistance to members who committed crimes on behalf of the gang, and thwarting efforts by law enforcement to apprehend the gang's members. Second, the evidence presented by the government, including the testimony of other members, the gang's books of "knowledge," and text messages sent by the defendants themselves, demonstrated that the 99 Goon Syndikate was an ongoing organization with a hierarchical structure or chain of command, whose members were governed by established rules and regulations. Third, the testimonial and

---

> In this case, the government has alleged that the 99 Goon Syndicate is an enterprise. If you find that this was a group of people characterized by (1) a common purpose; (2) an ongoing formal or informal organization; and (3) by associates who function as a continuing unit, then you may find that an enterprise existed.

Dkt. No. 738 at 51.

11

documentary evidence presented by the government demonstrated that the various members and associates of the 99 Goon Syndikate functioned as a continuing unit. While the defendants once again attempt to characterize themselves as a group of mere misfits who happened to commit several crimes, the court is convinced that the government presented ample evidence to establish that the 99 Goon Syndikate was an "enterprise" for purposes of the RICO and VICAR counts.

### 2.    Pattern of Racketeering Activity

The defendants also challenge the sufficiency of the evidence supporting their RICO conspiracy convictions on the basis that the government's evidence failed to demonstrate the requisite "pattern of racketeering activity" or that such activity was related to the enterprise. See 18 U.S.C. § 1962. The defendants argue that the evidence merely established a series of disconnected crimes, which, as the jury was instructed, "does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity." Dkt. No. 738 at 56.

Under 18 U.S.C. § 1962(d), it is unlawful to "conspire to violate" RICO. RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "A 'pattern of racketeering activity[]' consists of 'at least two acts of racketeering activity' occurring within a ten-year period, that are related and 'amount to or pose a threat of continued criminal activity.'" United States v. Baker, 598 F. App'x 165, 172 (4th Cir. 2015) (quoting 18 U.S.C. § 1961(5); H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). "Racketeering acts, often referred to as predicate acts, include any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in

12

a controlled substance chargeable under state law and punishable by imprisonment for more than one year." United States v. Cornell, 780 F.3d 616, 623 (4th Cir. 2015) (citing 18 U.S.C. § 1961(1)).

Viewing the evidence in the light most favorable to the government, the court concludes that the government met its burden of proving a conspiracy to participate in the conduct of the affairs of an enterprise that affected interstate commerce through a "pattern of racketeering activity." While it is true that "isolated acts of racketeering do not constitute a 'pattern' within the meaning of RICO," the court is satisfied that the government presented sufficient evidence for the jury to infer the necessary connection to form a pattern. United States v. McGill, 815 F.3d 846, 932 (D.C. Cir. 2016) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985)). The court is also satisfied that the government presented sufficient evidence to establish the requisite relationship between the enterprise and the pattern of racketeering activity.

The government's evidence established that members of the 99 Goon Syndikate were expected to "put in work," which meant, in essence, to commit robberies and other racketeering acts. By committing these criminal acts, as gang insider Anthony White testified, members of the enterprise hoped that they would earn both respect and rank, and ultimately move up in the organization. Moreover, the evidence at trial revealed multiple occasions on which proceeds from robberies were shared among members of the enterprise, as well as higher-ranking leaders who were not personally involved in the commission of the racketeering activity. For instance, Kweli received the proceeds from the Ceasar Brooks robbery; Anthony Stokes received the proceeds of the David Sharpe robbery, particularly a .22 caliber firearm; and Halisi Uhuru received the .38 caliber revolver taken from the residence of Michael Shaffer. While the defendants maintain that the robberies and other acts of racketeering were isolated crimes

13

unrelated to the enterprise or each other, there was ample evidence from which the jury could reasonably find that the defendants conspired to engage in a pattern of racketeering activity, and that the acts of racketeering were connected with the operation of the enterprise. Accordingly, the joint motion for judgment of acquittal will be denied.

### C.   Claim of Constructive Amendment of Count Thirty

The defendants next argue that the court constructively amended Count Thirty of the superseding indictment, charging murder of a witness in violation of 18 U.S.C. § 1512(a)(1)(C), by instructing the jury that the government must prove, as an element of the offense, that "there was a reasonable likelihood that at least one of the communications [that the defendants acted to prevent] would have been made to a <u>federal</u> law enforcement officer." Dkt. No. 738 at 131 (emphasis added). Although the defendants acknowledge that the court's instruction tracked the language of the statute and was consistent with existing precedent, the defendants nonetheless argue that the instruction was improper, since the superseding indictment referred to a law enforcement officer rather than a federal law enforcement officer.

As explained above, "constructive amendment only applies to the broadening, rather than the narrowing, of indictments." <u>United States v. Wilbur</u>, 674 F.3d 1160, 1178 (9th Cir. 2012); <u>see also</u> <u>United States v. Randall</u>, 171 F.3d 195, 203 (4th Cir. 1999) (explaining that a constructive amendment occurs when "the district court, through its instructions to the jury, . . . <u>broadens</u> the bases for conviction beyond those charged in the indictment) (emphasis added). Here, the defendants concede that the court's instruction "actually narrowed, rather than broadened the indictment." Dkt. No. 757 at 21. Accordingly, "there could not have been a constructive amendment." <u>United States v. Thomas</u>, 365 F. App'x 22, 26 (7th Cir. 2010); <u>see also</u> <u>United States v. Vernon</u>, 723 F.3d 1234, 1265 (11th Cir. 2013) (holding that the defendant's

14

claim of constructive amendment was without merit since, "if anything, the district court's charge narrowed the range of conduct on which [the defendant] could be convicted").

For all of these reasons, the defendants' joint motion for judgment of acquittal or a new trial will be denied.

### III. Kweli's Motion for a New Trial

In addition to the joint motion filed by himself and Mathis, Kweli filed his own motion for new trial. In this motion, Kweli claims that a new trial should be granted for the following reasons: (1) out-of-court statements were improperly admitted at trial; (2) mutually antagonistic closing arguments were made on behalf of himself and Mersadies; and (3) the jury was improperly instructed on the doctrine of vicarious liability set forth in Pinkerton v. United States, 328 U.S. 640 (1946).

### A.   Admission of Certain Out-of-court Statements

Kweli first argues that the court improperly admitted certain out-of-court statements related to Kevin Quick's murder, including statements Shantai Shelton made to co-conspirator Anthony White the morning after Quick was killed. Kweli contends that Shantai's statements were not made in furtherance of the charged RICO conspiracy and, thus, that they were not admissible under Federal Rule of Evidence 801(d)(2)(E).

Rule 801(d)(2)(E) provides that a statement is not hearsay if the statement is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect.'" United States v. Smith, 441 F.3d 254, 262 (4th Cir. 2006) (quoting United States v. Shores, 33 F.3d 438, 443 (4th Cir. 1994)). "Most courts,

including the Fourth Circuit, construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the exception." Id. (citation omitted). While mere idle chatter is generally insufficient to satisfy this requirement, United States v. Pratt, 239 F.3d 640, 643 (4th Cir. 2001), statements that "provide reassurance, or seek to induce a conspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy" are considered to be "in furtherance of" the conspiracy. United States v. Mandell, 752 F.3d 544, 552 (2d Cir. 2014) (citation and internal quotation marks omitted); see also United States v. Oliverez-Jiminez, 508 F. App'x 268, 271 (4th Cir. 2013) (holding that a co-conspirator's statement regarding the commission of a murder was admissible under Rule 801(d)(2)(E) since the statement "would serve to foster trust and cohesiveness amongst the group and imparted information regarding the progress and status of the conspiracy"); United States v. Rivera-Donate, 682 F.3d 120, 132 (1st Cir. 2012) (holding that the district court did not err in admitting certain co-conspirator statements regarding a drive-by killing, since "the district court could reasonably have determined that the conversation . . . about the murder . . . served to keep the members of the conspiracy up-to-date on important developments relating to the organization").

Applying these principles, the court remains convinced that Shantai's statements to White regarding Quick's abduction and murder were admissible under Rule 801(d)(2)(E). There was ample evidence to show that Kweli, Shantai, and White were members of the RICO conspiracy charged in the superseding indictment, and that the conspiracy was ongoing at the time of the conversation at issue. Moreover, at the very least, Shantai's statements to White would serve to impart information regarding the progress and status of the conspiracy. Because the statements were clearly made during and in furtherance of the conspiracy charged in Count One of the

superseding indictment, they were properly admitted under Rule 801(d)(2)(E). Moreover, the court agrees with the government that the statements were also admissible as declarations against penal interest under Federal Rule of Evidence 804(b)(3). Accordingly, Kweli's motion will be denied with respect to this claim.

### B.     **Mutually Antagonistic Defenses**

Kweli also seeks a new trial on the basis that he and Mersadies presented mutually antagonistic defenses at trial. Kweli cites to the closing argument made on behalf of Mersadies, during which her attorney acknowledged that she was with Mathis and Kweli on the night Quick was abducted and killed, but suggested that one of the men actually committed the murder. At the completion of the closing argument, Kweli objected and requested a mistrial. The court denied the request for a mistrial but granted Kweli's alternative request for a curative instruction. In addition to advising the jury that it "must give separate consideration to the evidence as to each defendant, and as to each charge against each defendant," the court's instructions provided, in pertinent part, as follows:

> What the lawyers say during their closing arguments is not evidence and is not binding upon you. Consequently, if any reference to testimony or exhibits during closing arguments is inconsistent with your own recollection of that evidence, it is your recollection that should control during your deliberations.
>
> Likewise, I tell you that the factual arguments or concessions of counsel for one co-defendant are not evidence, and should be considered to pertain only to that counsel's client. In any event, it always remains the jury's duty to determine the facts material to its verdict, based on its own independent evaluation of the evidence.

Dkt. No. 738 at 8, 14.

In the instant motion, Kweli continues to argue that the statement made during his co-defendant's closing argument necessitated a mistrial. The court disagrees. Even assuming that Kweli and Mersadies presented antagonistic defenses, the court concludes that neither severance

17

nor a mistrial was warranted. In <u>Zafiro v. United States</u>, 506 U.S. 534 (1993), the Supreme Court expressly declined to adopt a bright-line rule requiring severance whenever co-defendants present antagonistic defenses, even when prejudice is shown. <u>Id.</u> at 538-39. Instead, the Court held that "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Id.</u> at 539. The Court added that "less drastic measures, such as limiting instructions often will suffice to cure any risk of prejudice." <u>Id.</u>

In this case, the court is convinced that the limiting instructions outlined above were "sufficient to cure any prejudice caused when co-defendants accuse each other of the crime." <u>United States v. Stouffer</u>, 986 F.2d 916, 924 (5th Cir. 1993) (holding that the district court did not abuse its discretion in denying a motion for severance since the district court "instructed the jury to consider the evidence as to each defendant separate and individually, and not consider comments by counsel as substantive evidence") (internal quotation marks omitted); <u>see also</u> <u>United States v. Najjar</u>, 300 F.3d 466, 475 (4th Cir. 2002) ("To the extent there was any actual prejudice suffered by Najjar by any conflict in the defenses, we think that the district judge cured such conflict by proper limiting instructions."). Accordingly, even if Kweli and Mersadies could be said to have presented mutually antagonistic defenses, Kweli is not entitled to a new trial.

### C.    <u>Pinkerton Instructions</u>

Kweli's final argument is that the court constructively amended the indictment by instructing the jury on the doctrine of vicarious liability set forth in <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946), which "makes a person liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the

18

conspiracy." United States v. Ashley, 606 F.3d 135, 142-43 (4th Cir. 2010). Kweli concedes that the Fourth Circuit held in Ashley that the Pinkerton doctrine need not be charged in an indictment and, thus, that "a district court does not constructively amend an indictment by giving a Pinkerton instruction." Id. at 143. While Kweli maintains that Ashley was wrongly decided, this court is bound by Fourth Circuit precedent and must deny his motion for a new trial on this ground.[4]

### IV.    Supplemental Motion for Judgment of Acquittal

Mathis and Kweli filed a supplemental motion for judgment of acquittal based on the Fourth Circuit's recent decision in United States v. Bailey, 819 F.3d 92 (4th Cir. 2016), in which the Court held that the evidence presented at trial was insufficient to establish the element of intent necessary to convict a defendant of carjacking, in violation of 18 U.S.C. § 2119. Although the defendants were not charged with the substantive offense of carjacking, Count Thirty of the indictment, charging murder of a witness, specifically alleged that Kevin Quick was killed to prevent him from communicating with a law enforcement officer regarding the commission or possible commission of the federal offense of carjacking. Relying on Bailey, Mathis and Kweli argue that the evidence presented at trial was insufficient to establish that they acted with the intent necessary to sustain a conviction under the federal carjacking statute and, thus, that they must be acquitted of the murder offense charged in Count Thirty.

---

[4] Kweli also suggests that the government "disavowed" any reliance on the Pinkerton doctrine by not charging every co-conspirator with every charge in the superseding indictment. He cites no authority to support this argument, and the court is unable to locate any. The court agrees with the government that the absence of authority is not surprising, since the position advanced by Kweli "would lead to prosecutors and the grand jury having no discretion in who or what it charges, and would require that every member of a conspiracy be charged with every act committed during and in furtherance of the conspiracy." Dkt. No. 762 at 22.

19

The fundamental problem with the defendants' argument is that it is contrary to the plain language of the statute under which they were charged. The federal witness tampering statute makes it a crime "to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer . . . of the United States of information relating to the commission or <u>possible commission</u> of a [f]ederal offense." 18 U.S.C. § 1512(a)(1)(C) (emphasis added). The statute does not require the government to also prove the underlying offense to which the witness tampering related. As another district court recently observed, "[t]he addition of the phrase 'possible commission of a Federal offense' . . . enlarges the category of communications covered, and forecloses any argument that the statute's coverage depends on whether a crime was actually committed." <u>United States v. Mack</u>, No. 3:13-cr-00054, 2016 U.S. Dist. LEXIS 107320, *18 (D. Conn. Aug. 15, 2016).

Additionally, the defendants' new argument is contrary to Supreme Court precedent and their position at trial. The defendants, in their mid-trial motion to dismiss, cited the elements of witness tampering set forth by the Supreme Court in <u>Fowler v. United States</u>, 563 U.S. 668 (2011): "In order to obtain a conviction under this statute, the government must prove '(1) a killing or attempted killing, (2) committed with a particular intent, namely an intent (a) to prevent communication (b) about the commission or possible commission of a Federal offense (c) to a federal law enforcement officer or judge.'" Dkt. No. 664 at 2 (quoting <u>Fowler</u>, 563 U.S. at 672). Neither the Supreme Court, nor the defendants, suggested that the government was also required to prove each and every element of the underlying offense about which the witness tampering related. The defendants did not object to the court's instructions on the elements that must be proved to sustain a conviction under § 1512(a)(1)(C), and the court remains convinced that the instructions were consistent with the statute and existing precedent.

20

In sum, the court agrees with the government that the Fourth Circuit's decision in <u>Bailey</u> does not undermine the validity of the jury's verdict as to Count Thirty. Accordingly, the supplemental motion for judgment of acquittal will be denied.

**<u>Conclusion</u>**

For the reasons stated, the motion to dismiss Counts Thirty and Thirty-One of the superseding indictment will be denied, as will the motions for judgment of acquittal or a new trial.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 23rd day of September, 2016.

_____
Chief United States District Judge